** PART II **
I HAVE IDENTIFIED ONE CASE THAT HAS DIRECTLY APPLIED THESE PRINCIPLES TO STATE HEALTH CARE LAWS. IN WHITE V. CALIFANO, 437 F.SUPP. 543 (D.S.D. 1977), AFF'D 581 F.2D 697 (8TH CIR. 1978), AN INDIAN HEALTH SERVICE SOCIAL WORKER SOUGHT TO FILE A PETITION BEFORE A COUNTY BOARD OF MENTAL HEALTH FOR THE INVOLUNTARY COMMITMENT OF A MENTALLY ILL INDIAN TO A STATE MENTAL HOSPITAL.
UPON CONSIDERING THE MATTER, THE COUNTY BOARD DETERMINED THAT IT DID NOT "HAVE THE JURISDICTION TO ENTERTAIN, ACCEPT, OR ACT UPON PETITIONS FILED FOR THE INVOLUNTARY COMMITMENT TO THE SOUTH DAKOTA HUMAN SERVICES CENTER OF INDIAN PERSONS WHO ARE LOCATED WITHIN THE BOUNDARIES OF ANY INDIAN RESERVATION AND WITHIN INDIAN COUNTRY AS DEFINED BY18 U.S.C. 1151." 437 F.SUPP. AT 546. FOLLOWING THIS RULING, THE GUARDIAN AD LITEM OF THE MENTALLY ILL INDIAN BROUGHT A CIVIL RIGHTS ACTION ALLEGING, INTER ALIA, THAT THE COUNTY BOARD'S REFUSAL TO APPLY THE STATE'S INVOLUNTARY COMMITMENT LAWS IN INDIAN COUNTRY CONSTITUTED A DENIAL OF HER CONSTITUTIONAL RIGHT TO EQUAL PROTECTION.
IN REJECTING THIS ALLEGATION, THE CALIFANO COURT CONCLUDED THAT, IN LIGHT OF PRINCIPLES OF INDIAN SOVEREIGNTY, THE STATE'S INVOLUNTARY COMMITMENT LAWS COULD NOT BE APPLIED TO AN INDIAN RESIDING IN INDIAN COUNTRY. THE COURT STATED:
"IF THE COLLECTION OF TAXES OF ANY SORT FROM INDIAN PEOPLE IN INDIAN COUNTRY, OR THE POWER TO COERCE THEM TO COME INTO STATE COURTS AS DEFENDANTS IN CIVIL ACTIONS WOULD NECESSARILY INFRINGE UPON TRIBAL SOVEREIGNTY, THEN THERE IS NO WAY THAT VESTING THE STATE WITH THE POWER TO INVOLUNTARILY COMMIT RESERVATION INDIAN PERSONS TO STATE INSTITUTIONS WOULD NOT VIOLATE THE SAME SOVEREIGNTY. . . . THE CONCEPT OF TRIBAL SOVEREIGNTY, DILUTED THOUGH IT MAY BE, CANNOT COEXIST WITH THE PROCESS AND ACT OF INVOLUNTARY COMMITMENT BY THE POWER OF THE STATE UNDER THE CIRCUMSTANCES PRESENTED IN THIS CASE. 437 F.SUPP. AT 550."
B. APPLICATION OF SOVEREIGNTY PRINCIPLES TO HEALTH PROGRAMS ON INDIAN COUNTRY
THESE GENERAL SOVEREIGNTY PRINCIPLES INDICATE THAT A SEPARATE ANALYSIS MUST BE UNDERTAKEN FOR TWO KINDS OF HEALTH CARE FACILITIES: (1) FACILITIES TREATING ONLY INDIANS BELONGING TO THE TRIBE THAT OWNS THE LAND ON WHICH THE FACILITIES ARE LOCATED; AND (2) FACILITIES TREATING NON-INDIANS OR INDIANS BELONGING TO TRIBES OTHER THAN THE TRIBE OWNING THE FACILITIES' LANDS. AS TO THE FIRST KIND OF FACILITY, THE CASE LAW SUGGESTS THAT A HEALTH CARE FACILITY OPERATED BY A PRIVATE ORGANIZATION ON INDIAN COUNTRY DOES NOT NEED TO COMPLY WITH THE STATE HEALTH REGULATIONS APPLICABLE OUTSIDE INDIAN COUNTRY. STATE HEALTH CARE REGULATIONS APPEAR ANALOGOUS TO THE STATE INVOLUNTARY COMMITMENT LAWS CONSIDERED IN CALIFANO AND TO THE NUMEROUS OTHER-KINDS OF STATE LAWS THAT HAVE BEEN HELD INAPPLICABLE TO INDIAN ACTIVITIES WITHIN INDIAN COUNTRY. SEE WASHINGTON V. ENVIRONMENTAL PROTECTION AGENCY, 752 F.2D 1465 (9TH CIR. 1984) (STATE ENVIRONMENTAL REGULATIONS INAPPLICABLE TO INDIAN COUNTRY); SANTA ROSA BAND OF INDIANS V. KINGS COUNTY, 532 F.2D 655, 663-64 (9TH CIR. 1975), CERT DENIED,429 U.S. 1038 (1977) (STATE ZONING LAWS INAPPLICABLE IN INDIAN COUNTRY). THUS, IT SEEMS LIKELY THAT A COURT CONSIDERING THIS ISSUE WOULD CONCLUDE THAT THE APPLICATION OF STATE HEALTH CARE REGULATIONS TO A FACILITY LOCATED ON INDIAN LAND THAT TREATS ONLY INDIANS BELONGING TO THE TRIBE OWNING THE LAND ON WHICH THE FACILITY IS LOCATED WOULD INFRINGE UPON THOSE INDIANS' RIGHT TO GOVERN THEMSELVES.
AS TO THE SECOND KIND OF FACILITY (ONE THAT TREATS NON-INDIANS OR MEMBERS OF OTHER TRIBES) DIFFERENT CONSIDERATIONS ARE APPLICABLE. AS TO SUCH A FACILITY, ONE MUST UNDERTAKE THE BALANCING OF FEDERAL, TRIBAL AND STATE INTERESTS (AS SET FORTH IN WHITE MOUNTAIN, SUPRA) IN ORDER TO DETERMINE WHETHER STATE HEALTH CARE REGULATIONS MAY BE PROPERLY APPLIED TO THE FACILITY. SEE ALSO SEQUNDO V. CITY OF RANCHO MIRAGE, 813 F.2D 1387, 1390-91 (9TH CIR. 1987).
THIS BALANCING INQUIRY IS USUALLY UNDERTAKEN BY COURTS THAT HAVE A FACTUAL RECORD BEFORE THEM. THESE COURTS REVIEW PARTICULAR FACTUAL RECORDS IN ORDER TO ASSESS THE STRENGTH OF THE INTERESTS INVOLVED. SUCH A FACT-BASED REVIEW IS NECESSARY BECAUSE THE NATURE OF PARTICULAR INTERESTS MAY VARY FROM CASE TO CASE. FOR EXAMPLE, A STATE'S INTEREST IN REGULATING THE CONDUCT OF NON-INDIANS ON INDIAN COUNTRY MAY DEPEND IN PART, ON WHICH STATE LAWS ARE INVOLVED. A STATE MIGHT HAVE A STRONGER INTEREST IN ENFORCING LAWS REGARDING HAZARDOUS WASTES THAN IN ENFORCING MINOR TRAFFIC LAWS. SIMILARLY, ONE PARTICULAR KIND OF STATE REGULATORY ACTIVITY MAY HAVE A GREATER IMPACT ON TRIBAL SELF GOVERNMENT THAN ANOTHER KIND OF STATE REGULATION.
IN CONSIDERING THE QUESTIONS RAISED IN YOUR LETTER, I DO NOT HAVE ANY FACTUAL RECORD BEFORE ME. AS A RESULT, I CANNOT MAKE ANY DEFINITIVE STATEMENTS AS TO HOW THE SPECIFIC FEDERAL, TRIBAL, AND STATE INTERESTS INVOLVED SHOULD BE BALANCED. NEVERTHELESS, IF NONINDIANS ARE TREATED AT A HEALTH CARE FACILITY ON INDIAN LAND, THE STATE'S INTEREST IN PROTECTING THOSE INDIVIDUALS BY ENFORCING ITS REGULATIONS WOULD PROBABLY BE QUITE STRONG. UNLESS STATE ENFORCEMENT WOULD SIGNIFICANTLY INFRINGE UPON A TRIBE'S RIGHT TO GOVERN ITSELF (PERHAPS BY CONFLICTING WITH THE TRIBE'S OWN HEALTH REGULATIONS, IF IT HAS ANY), I WOULD THINK THAT THE STATE'S INTEREST IN PROTECTING ITS OWN CITIZENS WOULD SUPPORT ENFORCEMENT OF STATE HEALTH REGULATIONS TO FACILITIES TREATING NON-INDIANS OR MEMBERS OF OTHER TRIBES.
THIS GENERAL STATEMENT NEEDS TO BE QUALIFIED SOMEWHAT, FOR THERE ARE A NUMBER OF DECISIONS THAT HAVE HELD THAT CERTAIN STATE LAWS MAY NOT BE APPLIED EVEN TO NON-INDIAN ACTIVITIES WITHIN INDIAN COUNTRY. SEE E.Q., WHITE MOUNTAIN, 448 U.S. AT 145-152 (HOLDING STATE TAXATION OF LOGGING OPERATIONS OF NON-INDIANS ON INDIAN COUNTRY TO BE PRECLUDED); SEQUNDO, 813 F.2D AT 1392-94 (CONCLUDING THAT STATE RENT CONTROL ORDINANCE CANNOT BE APPLIED TO NON-INDIANS IN INDIAN COUNTRY). HOWEVER, CASES FINDING A LACK OF STATE JURISDICTION OVER NON-INDIAN ACTIVITIES IN INDIAN COUNTRY HAVE GENERALLY INVOLVED AN EXTENSIVE FEDERAL REGULATORY SCHEME THAT PREEMPTED STATE LAW. FOR EXAMPLE, IN SEQUNDO, THE NINTH CIRCUIT FOUND THAT FEDERAL REGULATIONS CONCERNING THE LEASING OF INDIAN LAND INDICATED THAT THE STATE LACKED AUTHORITY TO REGULATE LEASING ON ITS OWN.
IN THE HEALTH CARE FIELD, CONGRESS HAS ENACTED A NUMBER OF STATUTES ESTABLISHING FEDERAL PROGRAMS PROVIDING FOR INDIAN HEALTH CARE. SEE GENERALLY MCNABB V. BOWEN, 829 F.2D 787, 790-95 (9TH CIR. 1987) (OUTLINING HISTORY OF FEDERAL INVOLVEMENT IN INDIAN HEALTH CARE); CALIFANO, 437 F. SUPP. AT 551-553. NEVERTHELESS, AS THE NINTH CIRCUIT HAS STATED, "CONGRESS AND THE DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, . . . DID NOT VIEW FEDERAL RESPONSIBILITY EXCLUSIVE AND PREEMPTIVE OF STATE RESPONSIBILITY." MCNABB, 829 F.2D AT 792. IN ADDITION, ALTHOUGH A NUMBER OF REGULATIONS HAVE BEEN PROMULGATED FOR FACILITIES OPERATED BY THE INDIAN HEALTH SERVICE AND AS TO FACILITIES RECEIVING FEDERAL GRANTS, I HAVE NOT IDENTIFIED ANY ANALOGOUS REGULATIONS GOVERNING PRIVATE HEALTH CARE FACILITIES OPERATING ON INDIAN LANDS.
IN LIGHT OF THE ABSENCE OF FEDERAL REGULATION OF PRIVATE HEALTH CARE FACILITIES ON INDIAN LAND, I FIND THE SITUATION THAT YOU ARE CONCERNED WITH TO BE DISTINGUISHABLE FROM THOSE CONSIDERED BY THE COURTS IN WHITE MOUNTAIN AND SEGUNDO. THEREFORE, IT IS MY OPINION THAT, AS TO PRIVATE HEALTH CARE FACILITIES ON INDIAN LAND, STATE REGULATION IS NOT PREEMPTED BY FEDERAL LAW. AS A RESULT, AS I HAVE EXPLAINED ABOVE, WHETHER THE STATE MAY PROPERLY REGULATE SUCH FACILITIES THAT TREAT NON-INDIANS DEPENDS UPON THE PARTICULAR FEDERAL, TRIBAL AND STATE INTERESTS INVOLVED. THE STATE'S INTEREST IN PROTECTING ITS CITIZENS BY MEANS OF THESE REGULATIONS IS, I THINK, ENTITLED TO GREAT WEIGHT.
FINALLY, AS TO YOUR QUESTION INVOLVING THE ISSUANCE OF A CERTIFICATE OF NEED, I KNOW OF NO AUTHORITY HOLDING THAT THE FACT THAT A CERTIFICATE OF NEED HAS BEEN APPLIED FOR AND ISSUED DETERMINES FUTURE JURISDICTIONAL QUESTIONS. THEREFORE, IT IS M OPINION THAT WHETHER THE STATE HAS JURISDICTION OVER A PARTICULAR HEALTH CARE FACILITY DEPENDS UPON THE FACTORS I HAVE DISCUSSED ABOVE RATHER THAN ON WHETHER A CERTIFICATE OF NEED HAS BEEN ISSUED IN THE PAST.
(ROB RAMANA)